IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JIMMY AVALOS, individually and on         :         CIVIL ACTION
behalf of all other similarly situated     :
                                           :
              v.                           :
                                           :
SIG SAUER, INC.                            :         NO.  25-451

**MEMORANDUM**

**Padova, J.**                                                   **May 21, 2026**

Plaintiff Jimmy Avalos brought this putative class action against Defendant Sig Sauer, Inc., asserting products liability claims involving the Sig Sauer Romeo 5 Red Dot Sight (the "Product"). (Compl. ¶ 38.)  The Complaint alleges that the Product is defective because "it is powered by a small button cell battery that can be easily accessed by children posing an ingestion hazard" and because its packaging fails to adequately warn about this hazard.  (Id. ¶¶ 5-6.)  The Complaint asserts strict liability claims against Defendant, as well as claims for breach of warranty, negligence, and violation of Reese's Law, 16 C.F.R. § 1263.4.  Defendant has moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons that follow, we grant the Motion insofar as it seeks dismissal for lack of standing pursuant to Rule 12(b)(1).

I.     **BACKGROUND**

The Complaint alleges the following facts.  Defendant is a Delaware Corporation that produces firearms and related products within the United States.  (Compl. ¶¶ 11, 17.)  From February 2023 to December 2024, Defendant manufactured and sold the Product, which can be manually affixed to a consumer's firearm.  (Id. ¶¶ 18-19.)  The Product contains a viewer and uses a red dot at the viewpoint's center to provide a target for the user.  (Id. ¶ 20.)  The Product is

powered by a small button cell battery that is easily accessible by children and poses an ingestion hazard. (Id. ¶¶ 21-22.) Ingestion of the small button cell batteries can cause significant injuries to children and pets, including death. (Id. ¶ 23.) The Product's packaging is not child resistant. (Id. ¶ 25.) The Product thus has a significant defect in that "it allows easy access to its button cell battery, posing severe hazards in violation of federal safety laws and regulations." (Id. ¶ 26.)

Defendant marketed the Product without adequate safety warnings, thereby failing to disclose the significant risks associated with its defective packaging. (Id. ¶¶ 24, 27.) The Product was sold at major retailers including Bass Pro Shops and on online platforms, including Amazon and Defendant's own website. (Id. ¶¶ 4, 19 28.) "Defendant promote[d] the ease of replacing the battery as a feature of the [P]roduct." (Id. ¶ 28.) The Product's price ranged from $130-$200. (Id. ¶ 29.) Plaintiff bought the Product numerous times for personal use between January 2024 and January 2025 from vendors such as Amazon, Bass Pro Shops, and Optics Planet. (Id. ¶¶ 29, 34.)

Defendant recalled 230,000 Products on January 8, 2025 "because they were not properly packaged with child restraint packaging and [did] not bear the required warnings." (Id. ¶¶ 30, 35.) Plaintiff has two minor children and two dogs that were exposed to this ingestion hazard. (Id. ¶ 31.) As a result of the Product's ingestion risk, Plaintiff and all others similarly situated were deprived of the basis of their bargains because they were sold items that could expose their children and pets to significant injuries, including death. (Id. ¶ 32.) The dangerous risk of ingestion of the button cell battery renders the Product unfit for its intended use. (Id. ¶ 32.)

Plaintiff was in possession of the Product on January 8, 2025, the date the Product was recalled by Defendant. (Id. ¶ 35.) Plaintiff intended to purchase a version of this firearm accessory that was safe for normal use but was sold the Product, which has a dangerous ingestion hazard. (Id. ¶ 35.) Plaintiff would not have purchased the Product, or would have paid significantly less,

2

if he had been aware of the ingestion hazard.  (id. ¶ 36.)  Plaintiff has thus incurred damages as a result of Defendant's action.  (Id. ¶ 37.)

The Complaint asserts nine grounds for relief on behalf of Plaintiff and the putative class: Unjust Enrichment (Count I); Breach of Express Warranty (Count II); Breach of Implied Warranty (Count III); Strict Liability - Failure to Warn (Count IV); Strict Liability - Design Defect (Count V); Negligent Failure to Warn (Count VI); Negligent Design Defect (Count VII); Negligence (Count VIII); and Violation of Reese's Law (Count IX).  Plaintiff seeks the following relief:  an order certifying the class under Federal Rule of Civil Procedure 23; compensatory, statutory and punitive damages; prejudgment interest; restitution; injunctive relief,[1] reasonable attorneys' fees, and expenses, and costs of suit.

## II.    LEGAL STANDARD

Defendant moves to dismiss the Complaint on three grounds.  First, Defendant contends that we should dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff lacks standing to bring these claims.  Second, Defendant argues that Plaintiff's claims are moot as a result of its voluntary recall of the Product. And third, Defendant argues that we should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim on which relief can be granted.  As we grant the Motion on the ground that Plaintiff lacks standing, we do not address Defendant's other arguments in favor of dismissal.

"Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."  In re Schering Plough Corp. Intron/Temodar Consumer Class

---

[1] The Complaint does not describe the injunctive relief Plaintiff seeks.

Action, 678 F.3d 235, 243 (3d Cir. 2012).  "'A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.'"  Id. (alteration in original) (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).  "In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack."  Id. (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  A Rule 12(b)(1) motion that argues that a complaint "lack[s] sufficient factual allegations to establish standing" is a facial attack.  Id.   Defendant's argument relies entirely on the allegations of the Complaint and is therefore a facial attack on standing.

When we evaluate whether a complaint plausibly alleges that a plaintiff has standing, we "'apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim:  [we] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.'"  Huertas v. Bayer US LLC, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting In re Schering Plough Corp., 678 F.3d at 243).  Thus, "[t]o survive a motion to dismiss [brought pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "'While the plausibility standard does not impose a probability requirement, it does demand more than a sheer possibility that a defendant has acted unlawfully.'"  Huertas, 120 F.4th at 1174 (quoting In re Schering Plough Corp., 678 F.3d at 243).

## III.    DISCUSSION

"'It is the plaintiffs' burden, at the pleading stage, to establish standing,' by 'alleg[ing] facts that affirmatively and plausibly suggest that [they] ha[ve] standing to sue.'"  Richard Roe W.M. v. Devereux Found., 650 F. Supp. 3d 319, 326 (E.D. Pa. 2023) (alterations in original) (first quoting

Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011); then quoting Finkelman v. Nat'l Football League, 810 F.3d 187, 194 (3d Cir. 2016)).  The plaintiff "must meet this burden 'for each type of relief sought.'"  Id. (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).  "'To establish standing, a plaintiff must have (1) suffered an injury[-]in[-]fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  Huertas, 120 F.4th at 1174 (alterations in original) (quoting In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig., 903 F.3d 278, 284 (3d Cir. 2018)).  Defendant argues that Plaintiff has failed to establish that he suffered an injury in fact that is fairly traceable to Defendant's conduct.[2]

A.      Injury in Fact

Defendant first argues that the Complaint fails to allege that Plaintiff suffered an injury in fact.  "Satisfying the injury in fact element requires the party seeking to invoke federal jurisdiction to establish three sub-elements."  In re Johnson & Johnson, 903 F.3d at 284 (citing Mielo v. Steak 'n Shake, 897 F.3d 467, 479 n.11 (3d Cir. 2018)).  "First, the party must 'show that he or she suffered "an invasion of a legally protected interest."'"  Id. (quoting Spokeo v. Robins, 578 U.S. 330, 339 (2016)).  "Second, the party must show that the injury is both 'concrete and particularized.'"  Id. (quoting Spokeo, 578 U.S. at 339).  "Finally, the party must show that his or her injury is 'actual or imminent, not conjectural or hypothetical.'"  Id. (quoting Spokeo, 578 U.S. at 339).  "To be 'concrete,' an injury must be 'real, or distinct and palpable, as opposed to merely

---

[2] Defendant also argues that the Complaint fails to plausibly allege that Plaintiff's injury is likely to be redressed by a favorable judicial decision.  However, its redressability argument is nearly identical to its arguments that Plaintiff lacks standing because the Complaint fails to allege that Plaintiff suffered an injury in fact and that any injury he suffered is fairly traceable to Defendant's conduct.  Consequently, we have not separately addressed Defendant's argument with respect to redressability.

abstract.'"  Finkelman, 810 F.3d at 193 (quoting N.J. Physicians, Inc. v. President of the United States, 653 F.3d 234, 238 (3d Cir. 2011)).  "To be sufficiently 'particularized,' an injury must 'affect the plaintiff in a personal and individual way.'"  Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992)).  "Plaintiffs do not allege an injury-in-fact when they rely on a 'chain of contingencies' or 'mere speculation.'"  Id. (quoting (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 364 (3d Cir.2014)).

Plaintiff maintains that the Complaint plausibly alleges that he suffered an economic injury because it alleges that he was denied the basis of his bargain.  (See Compl. ¶ 32.)  "One way 'a plaintiff might successfully plead an economic injury [is] by alleging that she bargained for a product worth a given value but received a product worth less than that value.'"  Huertas, 120 F.4th at 1174 (alteration in original) (quoting In re Johnson & Johnson, 903 F.3d at 283).  "This is known as the benefit-of-the-bargain theory of injury.  Under this theory, '[t]he economic injury is calculated as the difference in value between what was bargained for and what was received.'"  Id. (alteration in original) (quoting In re Johnson & Johnson, 903 F.3d at 283.  However, "a plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing.  [H]e must allege facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture."  In re Johnson & Johnson, 903 F.3d at 285.  Thus, in order to sufficiently allege an injury in fact, the Complaint "must allege facts that would permit a factfinder to determine that the economic benefit [the plaintiff] received in purchasing the [Product] was worth less than the economic benefit for which [h]e bargained."  Id.

The Complaint alleges that Plaintiff was "denied the basis of [his] bargain" because he "bargained for a Product that was safe to use" but the design of the Product exposed minor children and pets to a safety hazard.  (Compl. ¶ 32.)  The Complaint further alleges that "[i]f Plaintiff had

6

been aware of the risk that ingestion of the easily accessible batteries posed to children and pets in the Products, he would not have purchased the Product or would have paid significantly less" and he thereby incurred damages.  (Id. ¶¶ 36-37.)  Plaintiff relies on In re Aqua Dots Prods. Liab. Litig., 654 F.3d 748 (7th Cir. 2011), in which the United States Court of Appeals for the Seventh Circuit found that the plaintiffs had standing to sue the manufacturer of a toy that posed a safety hazard to children even though their children had not been physically injured by the toy.  Id. at 750-51.  The In re Aqua Dots court explained that, while the plaintiffs had not suffered physical injuries, they were not uninjured as their loss was "financial:  they paid more for the toys than they would have, had they known of the risks the [toy] posed to children" and this "financial injury create[d] standing."  Id. at 751 (citations omitted).  We conclude that the Complaint thus plausibly alleges that Plaintiff suffered an injury pursuant to the benefit-of-the-bargain theory of injury.

B.    Injury that is Fairly Traceable to Defendant's Conduct

Defendant argues that Plaintiff cannot establish standing because the Complaint does not allege an economic injury that is fairly traceable to its conduct in light of its voluntary recall of the Product, which restored the value of the Product.  There is no dispute that, on January 8, 2025, Defendant recalled the Product.  (Compl. ¶ 35.)  According to the Consumer Product Safety Commission ("CPSC"), the recalled Products "contain a button cell battery that violates the mandatory federal regulations for consumer products containing button cell batteries because the button cell batteries can be easily accessed, posing an ingestion hazard.  The products include a button cell battery which is not in child-resistant packaging as required by Reese's Law. In addition, the products do not bear the required warnings."[3]  https://www.cpsc.gov/Recalls

---

[3] We may consider the contents of the CPSC's recall announcement because the Complaint relies on this document.  (See Compl. ¶¶ 2 n.1, 3 n.2, 18 n.3, 30 n.6, 35 n.7.)

/2025/SIG-SAUER-Recalls-ROMEO5-Red-Dot-Firearm-Sights-Due-to-Ingestion-Hazard-Viola

tions-of-Reeses-Law-Federal-Safety-Regulations-for-Consumer-Products-with-Button-Cell-Batt

eries-and-Child-Resistant-Button-Cell-Battery-Packaging (last visited April 28, 2026) (the "CPSC

Recall Notice").  Consumers who choose to participate in the recall, receive "a free recall kit,

which includes a new cap with the required labeling and an updated instruction manual." Id.  The

CPSC's recall announcement also notes that no incidents or injuries had been reported as a result

of the Product's defect.  Id.  The Complaint does not allege that Plaintiff participated in the recall

or that the recall was insufficient to remedy the Product's defect.

When defective products are fixed pursuant to a recall and "perform as they would without

the Defect, then it follows that the [product's] pre-defect values have likewise been restored."

Sugasawara v. Ford Motor Co., Civ. A. No. 18-6159, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21,

2019) (finding that plaintiffs, who had not alleged that any defect remained after the product in

question had been recalled, had not satisfied their burden of plausibly alleging that they had

suffered an economic injury pursuant to the benefit-of-the-bargain theory) (citing Hadley v.

Chrysler Group, LLC, 624 F. App'x 374 (6th Cir. 2015)).  Thus, "if a defect manifests, but has

been effectively repaired, and a plaintiff seeks only overpayment at the time of sale, then the

plaintiff does not have an Article III injury."  Plotts v. Am. Honda Motor Co., Civ. A. No. 24-4351,

2026 WL 880413, at *6 (D. Minn. Mar. 31, 2026).  As the Plotts court explained, "the plaintiff

would have received her benefit of the bargain" through the recall repair "because her product now

performs as intended."  Id.  "So, if the plaintiff does not allege any other injuries (ex: loss of use

while the defect manifested, out-of-pocket cost of repair, etc.), then the plaintiff has no Article III

injury."  Id.  Indeed, "[c]ourts in the Sixth, Ninth and Tenth Circuits have repeatedly found that

the issuance of a recall and repair deprives a party of an injury in fact based on any defect(s)

remedied by the recall and repair." Tarsio v. FCA US LLC, Civ. A. No. 22-9993, 2024 WL 1514211, at *4 (S.D.N.Y. Apr. 8, 2024) (citing Hadley v. Chrysler Grp., LLC, 624 F. App'x 374, 378 (6th Cir. 2015); Winzler v. Toyota Motor Sales U.S.A., Inc., 681 F.3d 1208, 1211 (10th Cir. 2012); Sharp v. FCA US LLC, 637 F. Supp. 3d 454, 468-69 (E.D. Mich. 2022); Sugasawara, 2019 WL 3945105, at *6; Cheng v. BMW of N. Am., LLC, Civ. A. No. 12-9262, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013)); see also In re Takata Airbag Prod. Liab. Litig., MDL No. 2599, Civ. A. No. 14-24009, 2022 WL 17546365 at *8 (S.D. Fl. Nov. 10, 2022) (concluding that plaintiffs "[who] ha[ve] already had or could have had the recall, repair and replacement [of their defective product] performed free of charge—have been compensated and made whole. They got what they bargained for"). Simply put, "if the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury." Tarsio, 2024 WL 1514211, at *4 (citing Preira v. Bancorp Bank, 885 F. Supp. 2d 672, 678 (S.D.N.Y. 2012)); see also Cain v. Johnson Health Tech North Am., Inc., Civ. A. No. 23-195, 2023 WL 12154889, at *6-7 (C.D. Cal. June 23, 2023) (rejecting plaintiff's argument that she had standing under the benefit-of-the-bargain theory because she overpaid for a defective product where the defendant offered a free remedy that would fix the defect and the plaintiff failed to plead "why the recall ha[d] not restored the value of her [product]"). Since the Complaint does not allege that Plaintiff was ineligible to participate in the recall and also fails to allege that the recall was insufficient to fix the Product's alleged defect, we find that the Complaint fails to allege that the value of the Products purchased by Plaintiff remains diminished by the defect after the recall.

Plaintiff argues that we should not follow this reasoning and should, instead, apply the reasoning of the court in Friche v. Hyundai Motor, America, Civ. A. No. 21-1324, 2022 WL 1599868 (C.D. Cal. Jan. 28, 2022), which expressly declined to apply the Sugasawara holding.

9

Friche, like Sugasawara, Plotts, and Tarsio, concerned a motor vehicle that had a defect that was subject to a recall.  See Friche, 2022 WL 1599868, at *1, Sugasawara, 2019 WL 3945105, at *1, Plotts, 2026 WL 880413, at *1-2, Tarsio, 2024 WL 1514211, at *1.  The Friche court declined to apply Sugasawara's determination that "a plaintiff cannot establish Article III standing on the theory that he would not have purchased a vehicle had he known about its defect when a defendant later repairs the vehicle's defect and restores the vehicle to the condition that the plaintiff expected when he purchased the vehicle."  Friche, 2022 WL 1599868, at *3.  The Friche court distinguished the facts in its case from those in Sugasawara, explaining that the plaintiff in Friche plausibly pled both that the "defect actually existed (rather that potentially existed)" in his car and that "the defendant fraudulently concealed the existence of the defect."  Id.  The Friche Court reasoned that a consumer should be able to assume that the vehicle he purchased does not contain a fraudulently concealed defect and that it would be "reasonable to conclude that a consumer like Plaintiff would not buy such a vehicle if he knew of the defect, even if he also knew that the defendant would one day [repair the defect] and restore the vehicle to the condition he bargained for."  Id.

Upon considering both Friche and the line of cases beginning with Sugasawara, we conclude that the instant case is more similar to Sugasawara, Plotts, Tarsio, and Cain because the Complaint here does not allege that Defendant fraudulently concealed the defect in the Product.[4] We also note that the complaint in Friche, unlike the Complaint in this case, alleged that the plaintiff had sustained additional injuries as a result of the fraudulently concealed defect, i.e.,

---

[4] Plaintiff argues that Friche applies here because the Complaint alleges that Defendant concealed the Product's defect.  However, the Complaint does not allege that Defendant fraudulently concealed the Product's defect.  The Complaint alleges only that "Defendant marketed the [Product] without adequate safety warnings, failing to disclose the significant risks associated with defective packaging."  (Compl. ¶ 27.)

defendant twice limited the range of his car in an attempt to remedy the defect and kept the car for two months.  Id.  We thus conclude that Defendant's recall of the Product and its issuance of a free recall kit to purchasers of the Product, "which include[d] a new cap with the required labeling and an updated instruction manual," CPSC Recall Notice, deprived Plaintiff of an injury in fact that was fairly traceable to Defendant based on Defendant's use of an easily accessed button cell battery in the Product without an adequate warning, because that defect has been remedied by the recall and repair.  See Tarsio, 2024 WL 1514211, at *4 (citing Hadley, 624 F. App'x at 378; Winzler, 681 F.3d at 1211; Sharp, 637 F. Supp. 3d at 468-69; Sugasawara, 2019 WL 3945105, at *6; Cheng, 2013 WL 3940815, at *4).

Defendant also argues that the Complaint fails to plausibly allege traceability because it fails to allege that Plaintiff participated in the recall.  Defendant relies on Sugasawara, in which the court found that a plaintiff could not establish causation if there was a recall remedy that he did not avail himself of, because, at that point, the defect is no longer fairly traceable to the manufacturer of the defective product, but to the individual who failed to participate in the recall. See Sugasawara, 2019 WL 3945105, at *6 (concluding that if the plaintiff failed to participate in the recall "[a]ny defect that persists in [the product purchased by the plaintiff] is not fairly 'traceable' to [the defendant] but rather to [the plaintiff]" and that "causation would therefore be lacking" (citing McConnell v. FEC, 540 U.S. 93, 226-28 (2003) overruled in part on other grounds by Citizens United v. Fed. Election Comm'n, 558 U.S. 310 (2010)).   Plaintiff does not address this argument in his response to the Motion to Dismiss.  We thus conclude that the Complaint also fails to plausibly allege facts that allow us to infer that Plaintiff's injury is fairly traceable to Defendant because it fails to allege that he participated in the recall.

11

In sum, we conclude that the Complaint fails to allege that Plaintiff has suffered an economic injury fairly traceable to Defendant because Defendant has offered a recall that appears to fully repair the alleged defect and the Complaint fails to allege that the recall was insufficient to fully repair the Product.  Moreover, the Complaint does not allow for a reasonable inference that any injury that Plaintiff may have suffered from the alleged defect in the Product is fairly traceable to Defendant because that the Complaint does not allege that Plaintiff participated in the recall.

C.    Standing to Seek Injunctive Relief

Defendant also argues that Plaintiff lacks standing to seek injunctive relief because the Complaint does not allege that he is likely to suffer from a future injury.  "When, as in this case, prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct."  McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)); see also In re Johnson & Johnson, 903 F.3d at 292 ("In order to have standing to seek injunctive relief, [plaintiff] must establish that she is 'likely to suffer future injury' from the defendant's conduct.  Because [the plaintiff] makes clear in this very lawsuit that she is well aware of health risks associated with using [the defendant's product], we readily conclude that she is not likely to suffer future economic injury." (quoting McNair v. Synapse Group Inc., 672 F.3d 213, 223 (3d Cir. 2012)).

Defendant argues that the Complaint fails to plausibly allege that Plaintiff is likely to suffer future injury from the Product because Defendant issued a voluntary recall which fixed the defect in the Products that Plaintiff owns and because the Complaint does not allege that Plaintiff will purchase the Product again in the future.  Plaintiff maintains that he is likely to suffer a future injury because "Defendant has failed to provide adequate warnings on a Product with an easy

12

button cell battery that poses an ingestion hazard to children and pets." (Pl. Br. at 7.)  Plaintiff,

however, does not address the fact that, pursuant to the recall, Defendant will send purchasers of

the Product "a free recall kit, which includes a new cap with the required labeling and an updated

instruction manual."  CPSC Recall Notice.  Since Defendant has recalled the defective Products

and the Complaint fails to allege that the recall is inadequate, and because Plaintiff is clearly aware

of the Product's defect, we conclude that the Complaint fails to plausibly allege that Plaintiff will

suffer a future injury as a result of the defect.  We further conclude, accordingly, that Plaintiff lacks

standing to assert a claim for injunctive relief.  See In re BPS Direct, LLC, 705 F. Supp. 3d 333,

365 (E.D. Pa. 2023) (noting that plaintiffs "must show a real and immediate threat of repeated

future injury in order to satisfy the 'injury in fact' requirement of Article III" in connection with a

claim for injunctive relief (citing Lyons, 461 U.S. at 102)), rev'd in part on other grounds -- F.4th

--, 2026 WL 1280969 (3d Cir. 2026); see also Pineda v. Lake Consumer Prods., Inc., 812 F. Supp.

3d 493, 500 (E.D. Pa. 2025) (concluding that the plaintiff could not "establish an imminent threat

sufficient to provide standing for the purposes of injunctive relief" where the Plaintiff was aware

of the product's defect and "fail[ed] to allege that she intends a future purchase of [the defective

product]").

## IV.    CONCLUSION

As we have concluded that the Complaint fails to allege that any injury suffered by Plaintiff

can be fairly traceable to Defendant's conduct, or that Plaintiff will suffer a future injury as a result

of the Product's defect, we further conclude that the Complaint fails to allege that Plaintiff has

standing to assert claims against Defendant arising from the Product's defects.  We therefore grant

the instant Motion and dismiss this action without prejudice for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1).  See In re Schering Plough Corp., 678 F.3d at 243 ("Under Fed. R. Civ.

P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim.); see also In re BPS Direct, LLC, 2026 WL 1280969, at *7 ("Because the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper." (quotation omitted)).

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.

14